UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDDY TOUSSAINT,

                  Plaintiff,

        -against-

CITY OF NEW YORK, THE DEPARTMENT
FOR THE AGING, CARYN RESNICK, SAL
RULLAN, JOHN DOE(S) and JANE DOE(S)
(names currently unknown), each in his/her official
and individual capacities,

                  Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/27/2021__

19 Civ. 1239 (AT)

**ORDER**

ANALISA TORRES, District Judge:

       Plaintiff, Eddy Toussaint, brings this employment discrimination action against Defendants,

the City of New York (the "City"), the New York City Department for the Aging ("DFTA"), Caryn

Resnick, Sal Rullan, Kamlesh Patel, Jack Rizzo, and John and Jane Does, alleging disparate

treatment, disparate impact, hostile work environment, conspiracy, and other claims arising under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. § 1981; 42 U.S.C.

§ 1983; 42 U.S.C. § 1985, 42 U.S.C. § 1986; the New York State Human Rights Law ("NYSHRL"),

N.Y. Exec. Law § 290, *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C

Admin. Code § 8-101, *et seq. See* Second Am. Compl. ("SAC") ¶¶ 102–124, ECF No. 79.

Specifically, Plaintiff, who is African American, alleges that his promotion within DFTA's

Information Technology ("IT") Unit was denied or delayed because of his race, that he and other

African-American employees were not offered equivalent opportunities to gain professional training

as non-African-American employees, and that Defendants' promotion policies have a disparate

impact on African-American employees. *Id.* ¶¶ 1–2, 15.  Now before the Court is Defendants'

motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 103.

For the reasons stated below, the motion is GRANTED in part and DENIED in part.

BACKGROUND[1]

Plaintiff, an African-American man, began work at DFTA in 1999 as a Computer Programmer Analyst, and was given the position of Computer Associate (Software) 1 in 2001. SAC ¶¶ 15, 26.

Promotions at DFTA are governed by New York Civil Service § 61, which requires administrative agencies to select one out of three eligible candidates to fulfil a vacancy, with the three candidates determined by the highest scores on a relevant examination offered by the agency. *Id.* ¶¶ 85–86; N.Y. Civ. Serv. §§ 50, 61. The agency can take into account seniority, previous training and experience, and performance evaluations when making its final decision. N.Y. Civ. Serv. § 52; SAC ¶¶ 55, 86; *see* SAC ¶ 95. The performance evaluations at DFTA have objective criteria, but allow supervisors the discretion to include or omit subjective factors. SAC ¶ 66.

Plaintiff alleges that starting in 2005, Sal Rullan, the Deputy Director of the IT Unit at DFTA, has attempted to or has passed over Plaintiff's two African-American co-workers, Marlena Latif and Jimmy Ekpe, for promotions for which they were qualified based on their exam scores. *Id.* ¶¶ 22, 30, 33, 37, 38, 42, 47, 51. Those positions were either left open or were eventually filled with non-African-American employees. *Id.* In addition, throughout Plaintiff's employment at DFTA, "on several occasions" he, Latif, and Ekpe were not informed of or not allowed to participate in trainings that would allow them to gain new skills required for promotions, although other, non-African-American employees that Rullan planned to promote attended the trainings. *Id.* ¶¶ 51, 70, 75, 92.

On September 7, 2016, Plaintiff took exam number 7510 for promotion to Computer Specialist (Software) ("CSSW"), which was open only to employees with a permanent civil service title, and placed first. *Id.* ¶ 44. On August 30, 2017, Rullan informed Plaintiff that he would inform Plaintiff of any available promotions, but advised Plaintiff to look for opportunities at other agencies;

---

[1] The following facts are taken from the SAC and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).

a week later Plaintiff's supervisor told him "that he should look for a position elsewhere if he didn't

like his job." *Id.* ¶¶ 45, 48.  On November 27, 2017, Plaintiff learned that he was not chosen for the

CSSW position based on exam 7510; instead, two non-African-American employees had gotten the

positions: the second-place scorer, whose provisional title was moved to a "[p]robable [p]ermanent"

title, and the third-place scorer.  *Id.* ¶ 44.  In June 2018, based on exam number 7005, two other non-

African-American employees who had scored lower than Plaintiff on that exam were hired for CSSW

positions, one moving from a provisional title to a "probable permanent" title, and the other being

promoted from a permanent title.  *Id.* ¶ 53.  Plaintiff further alleges that at some point, two

individuals were moved from "Help Desk" to network administrators, and two moved from Help

Desk to webhosting.  *Id.* ¶ 74.  On September 19, 2019, Plaintiff was promoted to CSSW.  SAC ¶ 15.

On April 12, 2018, Plaintiff filed a charge of discrimination (the "EEOC Charge") with the

Equal Employment Opportunity Commission (the "EEOC").  ECF No. 105-1.[2]  On December 27,

2018, Plaintiff initiated this action in state court; Defendants timely removed it to this court.  ECF

No. 1.  In an order dated June 29, 2020 (the "2020 Order"), the Court dismissed Plaintiff's first

amended complaint (the "FAC").  ECF No. 66.  Plaintiff then filed the SAC.  ECF No. 79.

## DISCUSSION

I.  Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual

allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007) (quotation marks omitted)).  "A claim has facial plausibility when the plaintiff pleads factual

---

[2] Plaintiff did not submit a copy of the EEOC Charge with the SAC.  However, Defendants submitted a copy in its
briefing on the motion to dismiss, ECF No. 105-1, of which the Court takes judicial notice.  *See, e.g.*, *Rusis v. Int'l Bus.
Machs. Corp.*, No. 18 Civ. 8434, 2021 WL 1164495, at *10 (S.D.N.Y. Mar. 26, 2021).

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* A court must "accept[] the factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

II.    Procedural Issues

       A.    Operative Allegations

In Plaintiff's opposition, he cites the FAC for a number of allegations. *See, e.g.*, Pl. Opp'n at 2, 14–18, ECF No. 108. "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668–69 (2d Cir. 1977). Therefore, the Court can only consider allegations in the SAC on the current motion to dismiss—not those in the FAC. *See Voltaire v. Westchester Cnty. Dep't of Soc. Servs.*, No. 11 Civ. 8876, 2016 WL 4540837, at *3 (S.D.N.Y. Aug. 29, 2016) (invoking the exception to this rule for *pro se* plaintiffs).

       B.    DFTA as a Party

In the 2020 Order, the Court dismissed all claims against DFTA, because DFTA is not a suable entity. 2020 Order at 8–9. Plaintiff raises no arguments the Court did not consider in the 2020 Order, *compare* Pl. Opp'n at 12 *with* ECF No. 45 at 10, and, therefore, the Court sees no reason to disturb its prior determination. *Ariz. Premium Fin. Co. v. Emps. Ins. of Wausau, of Wausau Am Mut. Co.*, 586 F. App'x 713, 716 (2d Cir. 2014) ("[T]he law of the case doctrine 'posits that when a court

4

decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.'" (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983))).

Accordingly, Plaintiff's claims against DFTA are DISMISSED.

C.     Personal Jurisdiction and Service

Defendants argue that all claims against Jack Rizzo and Kamlesh Patel should be dismissed for lack of personal jurisdiction, given they have not been served.  Def. Mem. at 7–8, ECF No. 104. Plaintiff has not filed affidavits of service with respect to both individuals, and the 90-day time limit for service has long since passed.  *See* SAC (filed on August 24, 2020); Fed. R. Civ. P. 4(m).

Despite the time limit, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).  Therefore, a court can grant an extension "(1) upon a showing of good cause; or (2) within its discretion."  *Brunson-Bedi v. New York (Hudson Valley DDSO)*, No. 15 Civ. 9790, 2018 WL 2084171, at *6 (S.D.N.Y. May 1, 2018) (citing Fed. R. Civ. P. 4(m)).  Plaintiff has not offered any reason that would give rise to good cause. Pl. Opp'n at 7–8.

Absent good cause, the Court could grant an extension in its discretion, after considering four factors: "(1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether [] defendant[s] had actual notice of the claims asserted in the complaint; (3) whether defendant[s] attempted to conceal the defect in service; and (4) whether defendant[s] would be prejudiced by extending plaintiff's time for service."  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010).  Plaintiff argues only that Rizzo had actual notice of the claims, due to his being named in the original complaint, ECF No. 1—though Plaintiff did not name Rizzo as a defendant in the FAC, ECF No. 39.[3]

---

[3] Plaintiff states that Defendants do "not point to any precedent in case law or statutory authority which would automatically terminate this matter against Jack Rizzo requiring him to be served with the [SAC]."  Pl. Opp'n at 8.

Regardless of whether Rizzo was on notice that the SAC named him as a defendant in this action, "[n]either actual notice nor absence of prejudice to the defendant provides an adequate basis for excusing noncompliance with Rule 4(m), unless plaintiff has diligently attempted to complete service." *United States ex rel. Weiner v. Siemens AG*, No. 12 Civ. 1466, 2021 WL 3544718, at *6 (S.D.N.Y. Aug. 10, 2021) (citation omitted); *see also Sartor v. Toussaint*, 70 Fed. App'x 11, 13–14 (2d Cir. 2002). Plaintiff has given no indication he attempted service. Therefore, the Court finds no reason to grant an extension of time to serve, and concludes it has no jurisdiction over Rizzo and Patel. *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." (quoting *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987))).

Accordingly, all claims against Rizzo and Patel are DISMISSED.

D.    Exhaustion

"Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006). A plaintiff "may raise in a district court complaint only those claims that either were included in or are reasonably related to the allegations contained in [his] EEOC charge." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001) (quotation marks and citations omitted). In the 2020 Order, the Court determined that Plaintiff's Title VII disparate impact claims were barred for lack of administrative exhaustion,

---

However, it is "long held" in this Circuit that "any claims included in the original complaint that are omitted from the amended complaint are considered abandoned and the claims against any defendant who is not named in the amended complaint are considered withdrawn." *Brown v. UCONN Health Ctr. Corr. Managed Health Care*, No. 12 Civ. 1563, 2014 WL 359128, at *1 (D. Conn. Jan. 31, 2014) (relying on *Int'l Controls Corp.*, 556 F.2d at 668).

because Plaintiff's EEOC Charge did not allege a facially neutral policy or practice, nor was the disparate impact reasonably related to his claim of disparate treatment.  2020 Order at 4–5.

For the same reasons, the Court concludes that Plaintiff's renewed Title VII disparate impact claim is barred.  Plaintiff has not presented new evidence regarding the allegations in the EEOC Charge, an intervening change of controlling law, or a clear error that would warrant the Court to reconsider its previous decision.  *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003).  Although Plaintiff asserts that the new allegations in the SAC about discrimination faced by Latif and Ekpe cure this defect, Pl. Opp'n at 9–10, these allegations do not alter the scope of the EEOC Charge.[4]

Accordingly, Plaintiff's Title VII disparate impact claim is DISMISSED.

E.      Time Bar

To claim a violation of Title VII, a plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts.  *Flaherty v. Metromail Corp.*, 235 F.3d 133, 136 n.1 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-5(e)(1)).  "A claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct."  *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 514 (S.D.N.Y. 2016), *aff'd*, 689 F. App'x 670 (2d Cir. 2017).  Defendants argue that any alleged discriminatory acts occurring 300 days before Plaintiff filed the EEOC Charge are time-barred.  Def. Mem. at 10–11.  Plaintiff contends that events occurring before the 300-day mark are actionable under the continuing violations doctrine.  Pl. Opp'n at 10–11.  The Court disagrees.

---

[4] Moreover, to the extent not exhausted, Plaintiff has not adequately alleged a Title VII disparate impact claim for the reasons discussed *infra* Part VI as to his NYSHRL claim.  *See Assistant Deputy Wardens/Deputy Wardens Ass'n v. City of New York*, No. 14 Civ. 4308, 2019 WL 4015119, at *1 (E.D.N.Y. Aug. 26, 2019) ("The standard for disparate impact claims under Title VII also applies to disparate impact claims under the NYSHRL." (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996))).

The Supreme Court held in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), that under Title VII, "discrete acts" such as failure to promote are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113; *see also Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 157 (2d Cir. 2012) ("*Morgan* established that an employer's failure to promote is by its very nature a discrete act."). Instead, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. Therefore, the Court previously found that any failure to promote that took place more than 300 days before the filing of the EEOC Charge was time-barred under Title VII. 2020 Order at 5–6. Similarly, failure to train or denial of training requests are considered "discrete acts" to which *Morgan* applies. *Anderson v. N.Y.C. Dep't of Corr.*, No. 12 Civ. 4064, 2013 WL 5229790, at *3 (S.D.N.Y. Sept. 17, 2013) ("[T]he continuing violation exception does not apply because each denial of . . . training . . . [is] considered [an] individual 'discrete act[]' against [plaintiff].").

Plaintiff argues that nevertheless, a failure to promote can be a continuing violation where (1) the person did not know they were being denied a promotion; (2) there was a continuing process over time of ignoring candidacy based on racial animus; or (3) there was a continuous practice of not considering the plaintiff for a promotion based on race. Pl. Opp'n at 11. Plaintiff cites no authority for these arguments, and the Second Circuit has specifically foreclosed the latter two arguments. *Chin*, 685 F.3d at 157 ("[A] plaintiff may recover for a failure to promote—regardless whether it was caused by an ongoing discriminatory policy—only if he files an EEOC charge within . . . 300 days of that decision.").

Accordingly, under Title VII, allegations regarding disparate treatment occurring before June 16, 2017—300 days before Plaintiff filed the EEOC Charge on April 12, 2018—are time-barred. And, for the same reasons stated in the 2020 Order, all § 1981 claims that accrued before December

27, 2014, § 1983 claims that accrued before December 27, 2015, and NYSHRL claims that accrued before December 27, 2015 are time-barred.  *See* 2020 Order at 6–8.

However, under the new allegations in the SAC, the Court concludes that the continuing violations doctrine applies to Plaintiff's NYCHRL disparate treatment claim.  "New York courts have held that the pre-*Morgan*, more generous continuing violations doctrine continues to apply to discrete acts of employment discrimination under NYCHRL."  *Bright v. Coca Cola Refreshments USA, Inc.*, No. 12 Civ. 234, 2014 WL 5587349, at *4 (E.D.N.Y. Nov. 3, 2014) (citation omitted), *aff'd sub nom. Bright v. Coca-Cola Refreshments USA, Inc.*, 639 F. App'x 6 (2d Cir. 2015).  Therefore, "[d]iscrete acts . . . can . . . trigger the NYCHRL's continuing violations doctrine where they can be shown to be the result of a discriminatory policy or practice."  *Taylor v. City of New York*, 207 F. Supp. 3d 293, 303 (S.D.N.Y. 2016).  However, "discrete discriminatory acts perpetrated by different individuals may still be insufficient to invoke the continuing violation doctrine even under the more liberal [NYCHRL] standard."  *Bright*, 2014 WL 5587349, at *4.  Plaintiff has sufficiently pleaded that the failure to promote him in November 2017 was part of a pattern of discriminatory failure to promote African-American employees by Rullan and his subordinates stretching back until 2005.  SAC ¶¶ 30–31, 33, 37–38, 42.  Accordingly, Plaintiff's NYCHRL claims that accrued before December 27, 2015, are not time-barred insofar as they are part of the continuing pattern of discriminatory treatment against Plaintiff.

Finally, Plaintiff's hostile work environment claims are not time-barred even if beginning outside the statute of limitations.  *Davis-Garett v. Urb. Outfitters, Inc*., 921 F.3d 30, 42 (2d Cir. 2019) ("[A] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." (emphasis omitted) (quoting *Morgan*, 536 U.S. at 122)).

### III.    Abandoned Claims

In his opposition, Plaintiff does not respond to Defendants' arguments that his §§ 1981, 1985, and 1986 claims should be dismissed.  *See* Pl. Opp'n; Def. Mem. at 12, 28–29.  "[D]istrict courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage."  *Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020). Although the Second Circuit has indicated that courts should depart from this practice in cases of manifest injustice, *see id.*, this is not such a case.  Here, the Court already deemed the § 1986 claim abandoned in the 2020 Order, *see* 2020 Order at 16, thus putting Plaintiff on notice of the possibility of abandonment.  Moreover, in the 2020 Order, the Court determined Plaintiff's § 1981 claim was deficient.  2020 Order at 9–12, 15–16; *cf. Colbert*, 824 F. App'x at 11–12 (deeming it a "manifest injustice" to deem a claim abandoned where in a previous order the Court had found it *sufficient*). Accordingly, the Court deems Plaintiff's §§ 1981, 1985, and 1986 claims abandoned.

### IV.    Disparate Treatment

#### A.    Title VII, Section 1983, and NYSHRL

Claims of disparate treatment under Title VII, § 1983, and the NYSHRL are analyzed using the *McDonnell Douglas* burden-shifting framework.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (noting that plaintiff's race discrimination claims brought under Title VII and § 1983 are analyzed under the *McDonnell Douglas* burden-shifting framework); *Ferrante v. Am. Lung Ass'n*, 687 N.E.2d 1308, 1311 (N.Y. 1997) ("The standards for recovery under [the NYSHRL] are in accord with [the] [f]ederal standards under [T]itle VII[.]").

To establish a prima facie case of discrimination under the *McDonnell Douglas* framework, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position

he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Ruiz*, 609 F.3d at 491–92.

In order to satisfy his burden at the pleadings stage, a plaintiff must plausibly allege "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). Although a plaintiff may raise an inference of discrimination by "making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001).

To establish a prima facie case of discrimination based on failure to promote, a plaintiff must show "that [he] applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). An inference of discrimination may arise if the position remains open and the employer continues to seek applicants of the plaintiff's qualifications, *see McDonnell Douglas*, 411 U.S. at 802, or if the position was filled by someone not a member of plaintiff's protected class, *see De la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996).

　　　　　　　1.　　　Adverse Employment Action

Defendants concede that Plaintiff has met the first prong, that he was qualified for his prior position of Computer Associate (Software), and that a failure to promote is an adverse employment action. Def. Mem. at 15–16. However, they argue that because Plaintiff was promoted in September 2019, Plaintiff can only complain of a delay in promotion, which they contend is not an adverse employment action. *Id.* at 16.

11

The Second Circuit has not stated that a delay in promotion cannot constitute an adverse employment action.  Rather, it has held that a delay in promotion is not an adverse employment action where "[plaintiff] does not allege that [defendant] denied him an available transfer, that [defendant] failed to pay his salary during the interim period, or that the delay in any way harmed his career."  *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000), *abrogated on other grounds*, *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010); *see also Rugg v. City of New York*, No. 18 Civ. 9762, 2019 WL 3242493, at *6 (S.D.N.Y. July 8, 2019) ("Even courts that have denied delayed promotion claims have recognized that a delay in promotion could constitute an adverse employment action supporting a valid Title VII claim." (quotation marks and citation omitted)).

Here, Plaintiff has alleged harm due to the delay in his promotion—a delay of at least approximately two years.  SAC ¶¶ 15, 44, 73, 81; *see Fitchett v. City of New York*, No. 18 Civ. 8144, 2019 WL 3430726, at *10 (S.D.N.Y. July 30, 2019) (finding an adverse employment action where a promotion was delayed at least ten months); *cf. Jeffrey v. Montefiore Med. Ctr.*, No. 11 Civ. 6400, 2013 WL 5434635, at *20 (S.D.N.Y. Sept. 27, 2013) (denying a materially adverse action based on a delay of two months).  In addition to the lost wages, Plaintiff alleges that this delay lowered his retirement benefits.  SAC ¶ 79.  Accordingly, the delay in Plaintiff's promotion constitutes an adverse employment action.  *See Guinyard v. City of New York*, 800 F. Supp. 1083, 1088–89 (E.D.N.Y. 1992) ("[A] delay in promotion may itself result in injury. . . .  Even for those who were [eventually] promoted, an illegal delay in promotion may still result in lost wages, benefits, and other types of injuries."); *cf. Fitchett v. City of New York*, No. 18 Civ. 8144, 2021 WL 964972, at *12 (S.D.N.Y. Mar. 15, 2021) (noting that plaintiff's "delayed-promotion claim is in one sense weaker than many, because, following his grievance, he was given a fully retroactive promotion, with retroactive pay" and alleged no other injury).

Moreover, Plaintiff has alleged an adverse employment action in Rullan's refusal to permit trainings, or failure to inform him of available trainings.  A failure to train can constitute an adverse employment action "where an employee can show material harm from the denial, such as a failure to promote or a loss of career advancement opportunities."  *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013) (quotation marks and citation omitted).  Plaintiff alleges that he, along with Latif and Ekpe, "were told on several occasions that they were not allowed to participate in trainings that did not entail tasks or skills which are part of their current job title," SAC ¶ 75, and that promotions hinged on completing specific trainings, *id.* ¶¶ 93–95.  These allegations are sufficient to establish that the failure to train was an adverse employment action.  *See Santiago v. Axis Specialty U.S. Servs., Inc.*, No. 18 Civ. 12012, 2021 WL 639527, at *7 (S.D.N.Y. Feb. 16, 2021) (finding a triable question of fact on a failure to train where plaintiff established that defendant "provided training to other employees and that she was not invited to participate in the training" and that "her ultimate termination was connected to a lack of knowledge caused by inadequate training").

## 2.    Inference of Discrimination

In order to establish an inference of discrimination in a failure to promote claim, Plaintiff must allege that the position remains open and the employer continues to seek applicants of the plaintiff's qualifications, *see McDonnell Douglas*, 411 U.S. at 802, or the position was filled by someone not a member of plaintiff's protected class, *see De la Cruz*, 82 F.3d at 20.  If a plaintiff takes the latter route, he must establish that the comparator was "significantly less qualified" for the position.  *See Anyanwu v. City of New York*, No. 10 Civ. 8498, 2013 WL 5193990, at *14 (S.D.N.Y. Sept. 16, 2013) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003)).

Here, Plaintiff alleges a number of non-African American individuals were promoted instead of him: (1) on November 27, 2017, Jianmin Li was promoted to CSSW despite scoring lower than

13

Plaintiff on the relevant exam, SAC ¶ 44; (2) that same day, Eleni Limperopoulos "was also given the position" by being moved from a provisional to "[p]robable [p]ermanent" title despite scoring lower than Plaintiff on the exam, *id.*; (3) on June 8, 2018, Sayed Zaman was moved from a provisional title to a "probable permanent" title for the CSSW position based on an exam in which he scored lower than Plaintiff, *id.* ¶ 53; (4) on June 11, 2018, Kari Chan was promoted from Computer Associate (SW) II to CSSW for an exam in which she scored lower than Plaintiff,[5] *id.*; (5) "Terence Mai and Milin Jani (Asian Americans) were moved from the Help Desk to network administrators and maintain [positions] as Computer Specialist," *id.* ¶ 74; and (6) "Igor Makavoz and Kari Chan were systematically moved from Helpdesk to webhosting," *id.*

For the majority of these comparators, Plaintiff relies on exam performance to demonstrate qualifications.  However, Plaintiff alleges that promotion was based both on exam scoring and on other factors, such as trainings and performance evaluations.  *Id.* ¶¶ 55, 69, 93. Therefore, merely stating the exam position, without otherwise demonstrating a lack of qualifications, does not sufficiently allege relative qualifications between these comparators and Plaintiff, nor that the comparators were significantly less qualified for the CSSW position.  *See Anyanwu*, 2013 WL 5193990, at *14 (collecting cases).

However, Plaintiff has alleged that exam 7510 was not open to provisional employees and that Limperopoulos had a provisional title when she took the exam. SAC ¶ 44.  Because Limperopoulos was, therefore, unqualified to sit for the exam, she was unqualified for the CSSW position filled from the list drawn from that exam.  Plaintiff has further alleged that Yogesh Niroula, who started working at DFTA considerably after Plaintiff, received training opportunities Plaintiff was unaware of and

---

[5] Although Defendants assert that Plaintiff does not claim that he took Exam 7005, from which Kari Chan and Sayed Zaman got the CSSW position, he states that he was number 824 on this list, indicating he took the relevant exam.  SAC ¶ 53.

was eventually promoted to Computer Specialist, *id.* ¶ 51, that two white employees were approved for trainings Plaintiff, Latif, and Ekpe were not aware of, *id.* ¶ 70, and that Rullan specifically denied Plaintiff, Latif, and Ekpe's requests for training, while approving similar trainings for other employees, *id.* ¶ 75. These allegations, take together, are sufficient to shift Plaintiff's claims from "conceivable," to "plausible." *Iqbal*, 556 U.S. at 678. Plaintiff, therefore, has established a prima facie case for Title VII, § 1983, and NYSHRL disparate treatment.[6]

Defendants do not otherwise rebut Plaintiff's claims by giving a non-discriminatory reason for the delay in Plaintiff's promotion or the refusals to permit him to acquire necessary professional training. Accordingly, Defendants' motion to dismiss Plaintiff's Title VII, § 1983, and NYSHRL disparate treatment claims is DENIED.

B.     NYCHRL

As the Court has determined Plaintiff's federal and state disparate treatment claims are sufficient to withstand the motion to dismiss, it concludes Plaintiff's NYCHRL claim similarly survives, because "federal . . . civil rights laws [are] a floor below which the City's Human Rights law cannot fall." The Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 § 1 (Oct. 3, 2005); *see, e.g., Clarke v. InterContinental Hotels Grp., PLC*, No. 12 Civ. 2671, 2013 WL 2358596, at *11 n.13 (S.D.N.Y. May 30, 2013).

---

[6] Plaintiff also argues that his supervisor's indicating Plaintiff should "look for a position elsewhere if he didn't like his job," SAC ¶ 48, is discriminatory on its face, "similar to racist remarks made to minorities on a regular basis when they are told to leave the United States if they are not happy here even when the minorities being told to leave are citizens of the United States," Pl. Opp'n at 15. The Court is not persuaded that this analogy holds, but need not determine that on this motion.

V.      Hostile Work Environment

      A.      Title VII and NYSHRL

To establish a hostile work environment claim under federal and New York state law, a plaintiff must show that his workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment[.]" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation marks and citations omitted); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011).  A plaintiff must also plead facts that tend to show that the complained-of conduct: "(1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [race or national origin]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quotation marks and citation omitted).

Whether an environment is hostile or abusive is determined by examining all of the circumstances. *Harris*, 510 U.S. at 23.  Factors to be considered include (1) the frequency and severity of the alleged discriminatory conduct; (2) whether the alleged conduct is physically threatening or humiliating or is merely an offensive utterance; and (3) whether it unreasonably interferes with an employee's work performance. *Id.*  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.* at 21.

Plaintiff's allegations do not rise to this level.  Plaintiff alleges no racially discriminatory statements, intimidation, or ridicule directed at him, and only one plausibly discriminatory statement pointed at Latif.  SAC ¶ 40; *Mendez-Nouel v. Gucci Am., Inc.*, No. 10 Civ. 3388, 2012 WL 5451189, at *9 (S.D.N.Y. Nov. 8, 2012) ("The plaintiff must show that the workplace was so severely

permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered."); *Rettino v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 5326, 2021 WL 2987113, at *6 (S.D.N.Y. July 15, 2021) (denying hostile work environment claim that was limited to a failure to hire).  Plaintiff's allegations regarding the failure to promote and train actions do not rise to an objectively severe and pervasive level.  *Reppert v. N.Y. State Dep't of State*, No. 19 Civ. 1518, 2021 WL 3165210, at *9 (N.D.N.Y. July 26, 2021) (denying a hostile work environment claim where plaintiff was not permitted to attend a professional event, among other things).

Therefore, Defendants' motion to dismiss Plaintiff's federal and state hostile work environment claims is GRANTED.

### B.    NYCHRL

Under the NYCHRL, the standard for maintaining a hostile work environment claim is lower than its federal or state counterparts.  *Farrugia v. N. Shore Univ. Hosp.*, 820 N.Y.S.2d 718, 724 (N.Y. Sup. Ct. 2006).  The NYCHRL imposes liability for harassing conduct that does not qualify as "severe or pervasive," and "questions of 'severity' and 'pervasiveness' are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability."  *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 (N.Y. App. Div. 2009) (citing *Farrugia*, 820 N.Y.S.2d at 725).  Plaintiff need only allege "that similarly situated individuals who did not share plaintiff's protected characteristics were treated more favorably than plaintiff[.]"  *Whitfield-Ortiz v. Dep't of Educ. of City of New York*, 984 N.Y.S.2d 327, 328 (N.Y. App. Div. 2014).  However, even under the NYCHRL, "petty slights or trivial inconveniences . . . are not actionable."  *Williams*, 872 N.Y.S.D.2d at 41.

As the Court has determined that Plaintiff has sufficiently alleged that he was treated less well than similarly situated non-African-American employees, plausibly due to a discriminatory motive, he has sufficiently alleged a hostile work environment claim under the NYCHRL.  *See Moazzaz v.*

17

*MetLife, Inc.*, No. 19 Civ. 10531, 2021 WL 827648, at *11 n.3 (S.D.N.Y. Mar. 4, 2021) ("Under the NYCHRL, there are not separate standards for 'discrimination' and 'harassment' claims." (quoting *Clarke*, 2013 WL 2358596, at *11)); *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 182–83 (E.D.N.Y. 2017).

Accordingly, Defendants' motion to dismiss Plaintiff's NYCHRL hostile work environment claim is DENIED.

VI.   NYSHRL Disparate Impact

To adequately allege a disparate impact claim under the NYSHRL, a plaintiff must demonstrate that a facially neutral practice had a disproportionate effect on a protected class.  *See N.Y. State Off. of Mental Health, Manhattan Psychiatric Ctr. v. N.Y. State Div. of Human Rights*, 645 N.Y.S.2d 926, 928 (N.Y. App. Div. 1996).  Furthermore, "[a] prima facie case of disparate impact is not established by a simple showing of statistical disparities in an employer's workforce."  *Id.*  The plaintiff carries the initial burden of identifying the specific employment practice responsible for the statistical disparities, "and the statistical evidence must be of a kind and degree sufficient to show that the practice in question caused the exclusion because of, in this case, race[.]"  *Id.* (citation omitted).  "The mere fact that there is racial imbalance in one segment of an employer's workforce does not, without more, establish a prima facie case of disparate impact."  *Id.*

Plaintiff arguably alleges practices of: (1) subjective evaluation policies, SAC ¶¶ 67–69; (2) not notifying employees of, or only sending certain employees to, available trainings, *id.* ¶¶ 89, 94; and (3) awarding promotions in a "secret process" "based upon a particular course of trainings that only the upper management are privy to[]," *id.* ¶ 93.  Even assuming these are actionable policies, however, Plaintiff has not supported their having discriminatory impact with statistical evidence demonstrating causation.

At the motion to dismiss stage, the standards for statistical evidence are relaxed.  *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 209–10 (2d Cir. 2020).  But, "even at this early juncture, the statistics must plausibly suggest that the challenged practice actually has a disparate impact."  *Id.* at 210.  Plaintiff's statistical analysis consists of a report by the Noël Collective, LLC, a "data scientist."  SAC ¶ 95; *see* ECF No. 81.  The report, analyzing "ACS data," finds that African-American men and women are proportionally underrepresented in "Computer and Mathematical Occupations."  ECF No. 81 at 1–2.  For Plaintiff specifically, it considered a list of courses taken by individuals at DFTA, and noted that "[t]here appears to be a disproportionate number of classes taken by or offered to those of the seemingly Asians and [w]hite populations as compared to" Plaintiff, which "bring[s] about questions of fairness and equity[.]"  *Id.* at 3–4.  These statements do not causally connect the specific practices with disparities at DFTA, and, therefore, cannot support a disparate impact claim.  Similarly, although Plaintiff argues that the allegation that 100 percent of the African-American employees were not promoted at DFTA demonstrates a disparate impact, Pl. Opp'n at 18, the SAC does not contain this allegation.  And, regardless, without a showing connecting the specific policies to that statistic, it is insufficient.  *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994 (1988) ("[T]he plaintiff's burden in establishing a prima facie case goes beyond the need to show that there are statistical disparities in the employer's work force.").

Accordingly, Defendants' motion to dismiss Plaintiff's NYSHRL disparate impact claim is GRANTED.

VII.   Municipal Liability

In order to sustain a § 1983 claim against a city, a plaintiff must establish municipal liability.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978).  Following *Monell*, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Id.* at 691 (emphasis omitted).

"Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

"To allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Missel v. Cnty. of Monroe*, 351 F. App'x. 543, 545 (2d Cir. 2009). Allegations that defendants acted pursuant to a "policy," without any facts suggesting the policy's existence, are plainly insufficient. *Id.*

Here, Plaintiff has not established an official policy; in fact, Plaintiff alleges that Rullan's actions at DFTA violate official municipal law. SAC ¶¶ 86–87. And, although Plaintiff alleges that DFTA has a "secret process that operates without any structured guidelines in awarding promotions to employees based upon a particular course of trainings that only the upper management are privy to[]," and a "practice . . . of sending employees to highly specialized trainings without permitting certain employees to go, or without notifying other employees of the trainings," SAC ¶¶ 93–94, such allegations, without more to demonstrate the existence of a formal government policy, are insufficient, *Missel*, 351 F. App'x. at 545.

Nor has Plaintiff alleged that Rullan is an authorized policymaker. Whether the official in question is a final policymaker "is a legal issue to be determined on the basis of state law," *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1349 (2d Cir. 1994). A plaintiff bears the burden of establishing an official's status as a final policymaker with allegations going to the official's scope of employment and his role within the municipal or corporate organization. *See Jeffes v. Barnes*, 208 F.3d 49, 57–58 (2d Cir. 2000).

Plaintiff alleges that Rullan "was the Deputy Director of the IT Unit at the Department for the Aging and was [] responsible for making the decision on who would be promoted or hired from the competitive exams for Computer Specialist (Software) position of Exam 7510," SAC ¶ 22, and that "Rullan . . . has full control over who he could hire because . . . his superior would typically go along with whoever he suggested," *id.* ¶ 77.  However, decisionmaking authority does not equate to policymaking authority.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–482 (1986); *Hurdle v. Bd. of Educ. of City of New York*, 113 F. App'x 423, 426–27 (2d Cir. 2004) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.  The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." (citation omitted)).  Although Plaintiff has alleged a number of informal DFTA policies, he has not alleged that Rullan had the formal policymaking authority to "adopt rules for the conduct of government."  *Id.* (quoting *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992)).  In fact, Plaintiff notes that Rullan's supervisor would "typically" go along with his suggestions, SAC ¶ 77, implying that Rullan's authority was not final.

Accordingly, Defendants' motion to dismiss Plaintiff's § 1983 municipal liability claim is GRANTED.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Plaintiff's Title VII and NYSHRL disparate impact and hostile work environment claims, §§ 1981, 1985, 1986 claims, § 1983 claim against the City, and all claims against Rizzo, Patel, and DFTA, is GRANTED.  The balance of

the motion is DENIED.  The Clerk of Court is directed to terminate the motions at ECF Nos. 103 and

108.

      SO ORDERED.

Dated: September 27, 2021
      New York, New York

_____
      ANALISA TORRES
     United States District Judge